1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
                    AT SEATTLE

9

10   HERBERT R. PUTZ, et al.,               CASE NO. C10-0741JLR

11              Plaintiffs,                 ORDER DENYING
                                            DEFENDANTS' MOTION TO
12        v.                                DISMISS COMPLAINT AND
                                            PLAINTIFFS' MOTION TO FILE
13   MICHAEL H. GOLDEN, et al.,             SUPPLEMENTAL AFFIDAVIT

14              Defendants.

15                      I.      INTRODUCTION

16        This matter comes before the court on Defendants Michael H. Golden and

17   Suzanne C. Golden's ("the Goldens") motion to dismiss (Dkt. # 10) Plaintiffs Herbert R.

18   Putz ("Dr. Putz") and Panonia Realty Corp.'s ("Panonia") complaint (Dkt. # 1), as well as

19   Plaintiffs' motion to file a supplemental affidavit (Dkt. # 24).  Having considered the

20

21

22

ORDER- 1

motions, as well as all proper submissions filed in support and opposition,[1] and having

heard the oral argument of the parties on December 3, 2010 concerning the motion to

dismiss, the court DENIES the Goldens' motion to dismiss (Dkt. # 10), and also DENIES

Plaintiffs' motion to file a supplemental affidavit (Dkt. # 24).

## II.   BACKGROUND

For purposes of a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), the court must accept all well-pleaded facts in the complaint as true and draw all

reasonable inferences in favor of the plaintiff.  *Wyler Summit P'ship v. Turner Broad.*

*Sys.*, 135 F.3d 658, 661 (9th Cir. 1998).  Those facts, as alleged in the complaint, are as

follows.

Twenty-three years ago, in 1987, Dr. Putz and the Goldens contracted for the sale

of 18 shares of stock of the Societe Civile Immobiliere Paepaepupure ("SCIP") from the

Goldens to Dr. Putz.  (Compl. at ¶¶ 3, 22-23 & Ex. A.)  The 18 SCIP shares represent a

stand-alone bungalow in Bora Bora, French Polynesia ("Bungalow # 12").  (*Id.* at ¶¶ 20,

22.)  In the contract, the Goldens promised:  (1) to transfer ownership of the 18 shares of

SCIP stock to Dr. Putz, and (2) to obtain approval of the share transfer from the SCIP

board of directors, as required by SCIP's by-laws and/or governing statutes.  (*Id.* at ¶¶ 24,

38.)

In order to obtain SCIP approval, Defendant Michael Golden sent an April 16,

1987 letter to the SCIP board notifying them of the pending transfer of the 18 SCIP

---

[1] The court details below those submissions of the parties that it is permitted to consider
on a Federal Rule of Civil Procedure 12(b)(6) motion.  *See infra* § III.B.

1    shares to Dr. Putz.  (*Id.* at ¶ 28, Exs. D & B at ¶ 4.)  At the time, Mr. Golden was a

2    member of SCIP's Board of Directors, and the Goldens claim that they obtained approval

3    for the share transfer at the 1987 SCIP Board meeting in Los Angeles, California.  (*Id.* at

4    ¶ 28 & Ex. B at ¶ 5.)

5         In August 1987, the Goldens were the sole shareholders and officers of Panonia.

6    (*Id.* at ¶ 25, Exs. C at 20 & B at ¶ 6.)  Dr. Putz understood that the Goldens intended to

7    transfer the 18 SCIP shares representing Bungalow # 12 first to Panonia, and then

8    through Panonia to Dr. Putz.  (*Id.* at ¶ 25, Ex. B at ¶ 6.)  Dr. Putz believed that the

9    Goldens had transferred the 18 shares to Panonia on September 30, 1987 (*id.* at ¶ 26 &

10   Ex. B at ¶ 6.), and that the Goldens then had assigned all of their shares in Panonia to Dr.

11   Putz on October 2, 1987.  (*Id.* at ¶ 27 & Exs. B at ¶ 9 & C.)  In return, Dr. Putz alleges

12   that he paid the Goldens $117,500.00 as promised in the contract.  (*Id.* at ¶ 29.)

13        Dr. Putz and Panonia allege, nevertheless, that the Goldens never obtained proper

14   SCIP Board approval for the share transfer, and never properly or validly transferred the

15   18 shares of SCIP stock to Dr. Putz through Panonia.  (*Id.* at ¶¶ 7-8, 39-40.)  Plaintiffs

16   allege that from 1987 through 2008 they were unaware of these surprising facts, instead

17   continually operating under the belief that they were the proper owners of the 18 SCIP

18   shares representing Bungalow # 12.  (*Id.* at ¶¶ 9, 30-33.)  Plaintiffs allege that all parties

19   treated them as if they were the proper owners of the 18 SCIP shares.  (*Id.*)  For example,

20   SCIP invited Plaintiffs, not the Goldens, to the general assembly of SCIP shareholders.

21   (*Id.* at ¶ 33.)  From 1987 to 2008, SCIP sent bills for the bungalow's maintenance and

22   association fees to Plaintiffs, and never to the Goldens.  (*Id.* at ¶ 33 & Ex. B at ¶ 9.)  Dr.

Putz alleges that he paid these bills totaling $175,151.00, and also paid $25,000.00 for necessary repairs and non-fixture improvements. (*Id.* at ¶ 31.) Dr. Putz alleges that he also openly and regularly used Bungalow # 12 as a rental property over the years. (*Id.* at ¶¶ 32, 46.) Finally, Dr. Putz even served as President of SCIP's Board of Directors for a period of time. (*Id.*, Ex. F at 10.)

In April 2003, Dr. Putz attempted to convert the 18 SCIP shares into a deed for Bungalow # 12. (*Id.* at ¶ 34 & Ex. G at 3.) At that time, SCIP refused to recognize Plaintiffs as the rightful owners of the 18 shares of SCIP. (*Id.* at ¶¶ 9, 35, 39-40.) SCIP took the position that the Goldens had never obtained proper SCIP Board approval for the share transfer from the Goldens to Panonia, and therefore, neither Dr. Putz, nor Panonia, was the rightful owner. (*Id.* at ¶¶ 9, 39-40.)

Consequently, Plaintiffs sued SCIP in French Polynesia. (*Id.* at ¶¶ 41-42, 44.) The Goldens represented to Dr. Putz that they had properly performed on the contract, and at one point during the litigation in French Polynesia, the Goldens agreed to assist Dr. Putz with his suit. (*Id.* at ¶ 43.) In 2005, Mr. Golden executed an affidavit, swearing under oath that the Goldens had obtained proper SCIP Board approval of the share transfer to Plaintiffs, and that they had validly transferred the 18 shares to Plaintiffs. (*Id.*) Ultimately, Plaintiffs' suit in French Polynesia failed at the trial court level (*id.* at ¶ 41), and was appealed and remanded to the lower court (*id.* at ¶ 44). The parties are in dispute concerning the present state of the litigation in French Polynesia, but Plaintiffs have alleged that "[n]o further action has occurred in the French Polynesian litigation." (*Id.*)

Between May 2005 and January 2009, the Goldens and Dr. Putz had ongoing communications through email and telephone conversations, and the Goldens attempted to assist Dr. Putz to complete the SCIP share transfer agreed to in their 1987 contract. (*Id.* at ¶ 45.)  Indeed, Plaintiffs have appended to their complaint the transcript of a 2009 hearing before a magistrate judge in the Western District of Virginia, in which Mr. Golden testifies that the subject matter of those conversations and emails was "the continuing effort" on the part of "both" Dr. Putz and the Goldens "to get the transaction completed."  (*Id.*, Ex. F at 39-40. [2])

Plaintiffs allege that, in 2008, the Goldens suddenly stopped assisting Dr. Putz, and refused to fulfill their contractual obligations to transfer ownership of the 18 shares

---

[2] The actual exchange during the hearing was as follows:

> Q:  . . . [B]efore the filing of the [Virginia] lawsuit, [Dr. Putz] had other conversations with [Mr. Golden]. . . . Is that correct?
>
> A:  Correct.
>
> Q:  Was the subject matter of those conversations and the e-mails the continuing effort on [Dr. Putz's] part to get the transaction completed?
>
> A:  On both our parts.
>
> ********
>
> Q:  I believe the answer was, on both our parts, that was the purpose.  Isn't that what you said?
>
> A:  Yeah.

(Compl., Ex. F (attaching the May 28, 2009 transcript of an evidentiary hearing, in Civil Cause No. 3:09cv0003, before the Honorable B. Waugh Crigler, United States Magistrate Judge for the Western District of Virginia) at 39-40.)

1 | of SCIP and to secure approval for the transfer from SCIP's Board. (*See id.* at ¶ 47.)

2 | Eventually, SCIP ousted Dr. Putz from possession of Bungalow # 12, a fact that Plaintiffs

3 | allege they repeatedly communicated to the Goldens. (*Id.* at ¶ 46.)  Plaintiffs allege that

4 | the Goldens have admitted that SCIP has told them that they are currently the owners of

5 | the disputed 18 SCIP shares. (*Id.* at ¶ 48 & Ex. G at 6 n.4.)  Plaintiffs also allege that in

6 | communications with SCIP and its agents, the Goldens acknowledged and acted as if they

7 | were the owners of the 18 SCIP shares representing Bungalow # 12.  (*Id.* at ¶ 48.)  In

8 | August 2008, SCIP began sending the Goldens invoices for maintenance and association

9 | fees related to Bungalow # 12.  (*Id.* at ¶ 49.)

10 |       Plaintiffs allege that the Goldens could arrange for the redemption of the 18 SCIP

11 | shares representing Bungalow # 12, and that this share to deed transfer would not require

12 | SCIP Board approval.  (*Id.* at ¶ 51.)  Plaintiffs further allege that the Goldens could then

13 | transfer the deed to Dr. Putz, fulfilling their contractual obligations.  (*Id.*)  Plaintiffs

14 | allege that the Goldens continue to refuse to perform this transaction.  (*Id.*)

15 |       In 2009, Plaintiffs filed suit in the Western District of Virginia (which is Plaintiffs'

16 | resident district) against the Goldens, who are residents within the Western District of

17 | Washington.  On December 31, 2009, the court in the Western District of Virginia

18 | dismissed Plaintiffs' action on grounds of lack of personal jurisdiction over the Goldens.

19 | (*Id.*, Ex. G.)

20 |       Plaintiffs filed the present proceeding in the Western District of Washington

21 | (where the Goldens reside) on April 30, 2010.  Plaintiffs have alleged causes of action for

22 | (1) breach of contract (*id.* at ¶¶ 54-64), (2) breach of the implied covenant of good faith

1    and fair dealing (*id.* at ¶¶ 65-68), (3) negligent misrepresentation (*id.* at ¶¶ 69-76), (4)

2    intentional interference with property (*id.* at ¶¶ 77-83), (5) intentional interference with

3    business expectancy (*id.* at ¶¶ 84-94), and (6) declaratory judgment (*id.* at ¶¶ 95-98).

4        The Goldens have moved to dismiss the complaint on several grounds, including

5    international comity or abstention, lack of ripeness, a forum selection clause, forum non

6    conveniens, expiration of the various applicable statutes of limitation, the economic loss

7    doctrine (now denominated the independent duty doctrine), and failure to state valid

8    causes of action with regard to tortious interference with property or trespass, and tortious

9    interference with business expectancies.

10                      **III.   ANALYSIS**

11    **A.   Standards**

12        The Goldens assert that they are bringing their motion pursuant to Federal Rules

13    of Civil Procedure 12(b)(3), 12(b)(4), 12(b)(5), and 12(b)(6).  (Mot. at 4.)  Rules 12(b)(4)

14    and 12(b)(5) relate to defenses based on insufficient process and insufficient service of

15    process, respectively.  Fed. R. Civ. P. 12(b)(4) & (5).   The Goldens have made no

16    arguments and presented no evidence with regard to these defenses in their motion, and

17    thus the court considers their motion under the precepts of Rules 12(b)(3) and 12(b)(6)

18    only.[3]

19

20 ───────────────────

21      [3] Plaintiffs also note (Resp. (Dkt. # 18) at 2, n.1) that summons were issued (Dkt. ## 1, 2)
that contained all necessary elements, *see* Fed. R. Civ. P. 4(a) & (b), and that service of process

22    was executed personally and individually on both of the Goldens (*see* Dkt. ## 8 & 9), satisfying
Fed. R. Civ. P. 4(c) and (e).

1      A motion to dismiss based on a forum selection clause is construed as a Federal

2 Rule of Civil Procedure 12(b)(3) motion to dismiss for improper venue. *Argueta v.*

3 *Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir. 2004). On a Rule 12(b)(3) motion, the

4 allegations in the complaint need not be accepted as true, and the court may consider

5 facts outside the complaint. *Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1137 (9th

6 Cir. 2004). Nevertheless, the court "must draw all reasonable inferences in favor of the

7 non-moving party and resolve all factual conflicts in favor of the moving party." *Id.* at

8 1138.

9      The remainder of the Goldens' motion may be considered as a motion to dismiss

10 under Federal Rule of Civil Procedure 12(b)(6). When considering a motion to dismiss

11 under Rule 12(b)(6), the court construes the complaint in the light most favorable to the

12 non-moving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940,

13 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all

14 reasonable inferences in favor of the plaintiff. *Wyler Summit*, 135 F.3d at 661. "To

15 survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

16 as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S.

17 __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

18 (2007)); *see Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A

19 claim has facial plausibility when the plaintiff pleads factual content that allows the

20 court to draw the reasonable inference that the defendant is liable for the misconduct

21 alleged." *Iqbal,* 129 S. Ct. at 1949. Dismissal under Rule 12(b)(6) can be based on the

22 lack of a cognizable legal theory or the absence of sufficient facts alleged under a

1    cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

2    1990).

3    **B.      Materials the Court Considers**

4            Generally, a district court may not consider any material beyond the pleadings in

5    ruling on a Rule 12(b)(6) motion to dismiss.  *Lee v. City of Los Angeles,* 250 F.3d 668,

6    688 (9th Cir. 2001).  The Ninth Circuit has carved out three exceptions to this rule.

7    First, a court may consider material properly submitted as a part of the complaint.  *Id.*

8    Second, a court may consider documents whose contents are alleged in the complaint

9    and whose authenticity no party questions, but which are not physically attached to the

10   pleading.  *Id.* at 454.  Third, a court may take judicial notice of matters of public record.

11   *Id*.  This court, therefore, properly considers the documents attached to Plaintiffs'

12   complaint in its evaluation of the Goldens' motion to dismiss.[4]

13           However, the Goldens have also moved for dismissal based on improper venue.

14   As noted above, for this portion of the Goldens' motion, the court may consider matters

15   outside the pleadings.  *Murphy,* 362 F.3d at 1137.  In addition, "[t]he court may accept

16   declarations outside the pleadings to decide [a motion based on] forum non conveniens."

17   *U.S. Vestor, LLC v. Biodata Info. Tech. AG,* 290 F. Supp. 2d 1057, 1062, n.1 (N.D. Cal.

18   2003) (citing *Van Cauwenberghe v. Biard,* 486 U.S. 517, 529 (1988); *AT&T v.*

19   *Compagnie Bruxelles Lambert,* 94 F.3d 586, 589-591 (9th Cir. 1996)).

---

21   [4] The court also notes that the transcript of an evidentiary hearing and the memorandum
     opinion of the United States District Court for the Western District of Virginia that are attached
22   to Plaintiffs' complaint (*see* Compl., Exs. F & G) are also matters of public record.

1    Along with their motion, the Goldens submitted the declaration of Howard Hall

2    attaching a certified translation of Exhibit E to Plaintiffs' complaint, a copy of the

3    complaint (which has now been dismissed) filed by Plaintiffs against the Goldens in the

4    Western District of Virginia, and a portion of SCIP's 1977 Articles of Association.

5    (Dkt. 10-1.)  While the second exhibit passes muster as a public record permissible for

6    consideration in the context of a Rule 12(b)(6) motion, the first and third do not.  Thus,

7    while the court may consider all of the exhibits with regard to the Rule 12(b)(3) or forum

8    non conveniens portions of the Goldens' motion, the court may only consider the second

9    exhibit with regard to those portions of the motion brought pursuant to Rule 12(b)(6).[5]

10    The Goldens also submitted a supplemental declaration from Mr. Hall (Dkt. #

11    23), along with their reply memorandum (Dkt. # 22).  This declaration attaches the July

12    2, 2009 Report and Recommendation ("R&R") of the magistrate judge in the Western

13    District of Virginia litigation, which is a public record that the court may properly

14    consider in the course of determining a Rule 12(b)(6) motion.[6]

15    Along with their response to the Goldens' motion to dismiss, Plaintiffs submitted

16    the declaration of Steven W. Fogg, which attaches a declaration by Meredith L. Rugani

17    regarding the status of the legal proceedings in French Polynesia, as well as copies of

18    various communications between Dr. Putz, Panonia, the Goldens, and a representative of

19

20    [5] Nevertheless, the court notes that none of these exhibits have had any bearing on its
21    resolution of any portion of the Goldens' motion.

22    [6] Again, the court notes that none of the information contained in the R&R was pertinent
to the court's resolution of any portion of the Goldens' motion.

SCIP.  (Fogg Decl. (Dkt. # 19).)  The court did not consider Mr. Fogg's declaration in rendering its decision to deny the Goldens' motion to dismiss, because (as indicated by the authorities cited above) to do so would have been improper in the context of a Rule 12(b)(6) motion to dismiss, and because it is unnecessary for resolution of the issues before the court.  For the same reasons, the court denies Plaintiffs' motion to for leave to file an additional supplemental affidavit from Mr. Fogg (Dkt. # 24).

**C.**     **International Comity or Abstention**

The Goldens assert that the litigation between Panonia and SCIP in French Polynesia is ongoing, and that based on the principles of "international comity" this court should abstain from exercising its jurisdiction and dismiss the present suit.  (Mot. at 6-9.) The parties dispute whether or not the litigation in French Polynesia is continuing or has been terminated.  Plaintiffs insist that the action "remains permanently terminated today." (Resp. (Dkt. # 18) at 5; *id.* at 6 ("There is no [French Polynesian] litigation pending.").)[7] However, the factual dispute is of no relevance here because even if the litigation in French Polynesia were ongoing, it would provide no basis for the court's exercise of abstention.

"Comity is a recognition which one nation extends within its own territory to the legislative, executive or judicial acts of another."  *In re Grand Jury Proceedings,* 709 F. Supp. 192, 195 (C.D. Cal. 1989) (quoting *Somoportex Ltd. v. Philadelphia Chewing Gum*

---

[7] The Complaint alleges as follows:  "On appeal, . . . the Court of Appeal of Papeete, Civil Chamber remanded the case to a lower court.  No further action has occurred in the French Polynesian litigation."  (Compl. at ¶ 44.)

1    *Corp.,* 453 F.2d 435, 440 (3d Cir. 1971)).  As a matter of comity, United States courts

2    enforce the judgments of a foreign court unless those judgments "are the result of

3    outrageous departures from our own motions [sic] of 'civilized jurisprudence.'"  *British*

4    *Midlands Airways Ltd. v. Int'l Travel, Inc.,* 497 F.2d 869, 871 (9th Cir. 1974) (citing

5    *Hilton v. Guyot,* 159 U.S. 113, 205 (1895)).  Application of the principles of international

6    comity "is limited to cases in which 'there is in fact a true conflict between domestic and

7    foreign law.'"  *In re Simon,* 153 F.3d 991, 999 (9th Cir. 1998) (quoting *Hartford Fire Ins.*

8    *Co. v. California,* 509 U.S. 764, 798 (1993)).  Where there is only the possibility of an

9    inconsistency between a future judgment of a domestic court and future judgment of a

10   foreign court, there is no "true conflict."  *See Mujica v. Occidental Petroleum Corp.,* 381

11   F. Supp. 2d 1134, 1156 (C.D. Cal. 2005).  In such cases, "[t]he potential of conflicting

12   findings is more properly characterized as raising the issue of international abstention

13   rather than international comity."  *Id.* at 1157.

14          In the instant case, the court finds that there is no "true conflict."  Since this court

15   has not made any findings of liability or provided any remedies, there is no present

16   conflict between the instant case and any proceedings that may be ongoing in French

17   Polynesia.  In other words, there is no reason to believe that the Goldens could not

18   comply with an order or judgment of this court.  *See In re Grand Jury Proceedings,* 40

19   F.3d 959, 964 (9th Cir. 1994) ("A party relying on foreign law to contend that a district

20   court's order violates principles of international comity bears the burden of

21   demonstrating that the foreign law bars compliance with the order.") (citing *In re Grand*

22   *Jury Proceedings (Shams),* 873 F.2d 238, 239-40 (9th Cir. 1989)).  However, the court

1   acknowledges that there is the possibility of an inconsistency between a future, potential

2   judgment of this court, and a judgment of the French Polynesian court (assuming those

3   proceedings are still ongoing).  Thus, here, the potential for conflicting findings is more

4   properly characterized as raising an issue of international abstention rather than

5   international comity.  While the overlap between the two doctrines is substantial,

6   international abstention is more focused on parallel judicial proceedings such as may

7   occur here.  *Mujica,* 381 F. Supp. 2d at 1157.

8          The Ninth Circuit has indicated that international abstention analysis should be

9   guided by principles set forth by the Supreme Court in *Colorado River Water*

10  *Conservation Dist. v. United States,* 424 U.S. 800 (1976).  *See Neuchatel Swiss Gen. Ins.*

11  *Co. v. Lufthansa Airlines,* 925 F.2d 1193, 1194-95 (9th Cir. 1991) (vacating district

12  court's stay of action in deference to parallel proceedings in Geneva, Switzerland

13  pursuant to the Colorado River doctrine).  In *Colorado River,* the Supreme Court made

14  clear that:

15          [a]bstention from the exercise of federal jurisdiction is the exception, not
            the rule.  The doctrine of abstention, under which a District Court may
16          decline to exercise or postpone the exercise of its jurisdiction, is an
            extraordinary and narrow exception to the duty of a District Court to
17          adjudicate a controversy properly before it.  Abdication of the obligation to
            decide cases can be justified under this doctrine only in the exceptional
18          circumstances where . . . [it] would clearly serve an important
            countervailing interest.
19
    *Colorado River,* 424 U.S. at 813 (internal quotations omitted).
20
           Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction
21
    they have been given.  *Id.* at 817.  The *Colorado River* doctrine requires exercise of
22

ORDER- 13

1    jurisdiction absent exceptional circumstances because "requiring federal court dismissal

2    would give litigants a powerful tool to keep cases out of federal court . . . by filing a

3    parallel suit [elsewhere and] would frustrate the ability of federal courts to adjudicate

4    cases involving American law." *Mujica,* 381 F. Supp. 2d at 1157 n.12 (internal

5    quotations omitted).  Accordingly, the "mere potential for conflict in the results of

6    adjudications, does not, without more, warrant staying exercise of federal jurisdiction."

7    *Colorado River,* 424 U.S. at 816.  The Ninth Circuit has rejected the idea that federal

8    courts should abstain simply because parallel proceedings are taking place in a foreign

9    court, even if more progress has been made in the foreign proceeding.  *See Neuchatel,*

10   925 F.2d at 1195.  "[C]onflicting results, piecemeal litigation, and some duplication of

11   judicial effort is the unavoidable price of preserving access to . . . federal relief."  *Id.*

12   (quoting *Tovar v. Billmeyer,* 609 F.2d 1291, 1293 (9th Cir. 1979)).

13          The factors to consider in determining whether a *Colorado River* stay is

14   appropriate, include:  (1) whether either court has assumed jurisdiction over a *res*, (2) the

15   relative convenience of the forums, (3) the desirability of avoiding piecemeal litigation,

16   (4) the order in which the forums obtained jurisdiction, (5) what law controls, and (6)

17   whether the foreign proceeding is adequate to protect the parties' rights.  *See Nakash v.*

18   *Marciano,* 882 F.2d 1411, 1415 (9th Cir. 1989).  "These factors are to be applied in a

19   pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical

20   checklist.'"  *Id.* (quoting *Am. Int'l Underwriters, (Philippines), Inc. v. Continental Ins.*

21   *Co.,* 843 F.2d 1253, 1257 (9th Cir. 1988).  The Goldens have asserted that the balance of

22   these factors weigh in favor of dismissal.  (*See* Mot. at 6-9.)

1   However, if there is substantial doubt as to whether the foreign proceeding will

2   resolve the federal action, there is no need to even undertake this multifactor analysis.

3   *See Intel Corp. v. Advanced Micro Devices, Inc.,* 12 F.3d 908, 913 n.7 (9th Cir. 1993).

4   When a district court decides to dismiss or stay under *Colorado River*, it
    presumably concludes that the parallel [] litigation will be an adequate

5   vehicle for the complete and prompt resolution of the issues between the
    parties.  If there is any substantial doubt as to this, it would be a serious

6   abuse of discretion to grant the stay or dismissal at all.

7   *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 28 (1983); *see also*

8   *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 277 (1988) (declaring

9   that a district court may enter a *Colorado River* stay only if it has "full confidence" that

10  the parallel proceedings will end the litigation).  Thus, "the existence of a substantial

11  doubt as to whether the [other] proceedings will resolve the federal action precludes the

12  granting of a stay." *Intel,* 12 F.3d at 913.

13  In *Intel,* the Ninth Circuit found that there was sufficient doubt to preclude a

14  *Colorado River* stay because the concurrent state court proceedings would only resolve

15  all of the issues in the federal action if it confirmed an arbitration award.  12 F.3d at 913.

16  If, instead, the state court overturned the arbitration award, the case would need to return

17  to federal court for further adjudication.  *Id.*  Consequently, there was substantial doubt

18  that the state court proceedings would completely resolve the issues in the federal action,

19  and a stay was not justified.  *Id.*  Likewise, in *Smith v. Central Ariz. Water. Conservation*

20  *Dist.,* 418 F.3d 1028, the Ninth Circuit found that the *Colorado River* doctrine did not

21  apply because, in the state court action, the plaintiff's sought a determination of their

22  rights under different contracts than those at issue in the federal court action.  *Id.* at 1033.

1    Applying this reasoning to the case at hand,[8] the court lacks full confidence and

2    finds substantial doubt that the French Polynesian proceedings would resolve all of the

3    issues in this action.  The Goldens and Dr. Putz are not even parties to the French

4    Polynesian litigation, which involves only SCIP and Panonia.  (*See* Compl., Ex. G

5    (attaching Memorandum Opinion of the District Court for the Western District of

6    Virginia) at 3 (". . . Panonia brought suit against SCIP in French Polynesia.").)  Further,

7    the French Polynesian dispute focuses on resolution of the parties' rights and the proper

8    transfer of shares under SCIP regulations.  (*Id.* ("The courts of French Polynesia

9    apparently found that the shares . . . had not been properly transferred according to SCIP

10   regulations. . . .").)  Here, the dispute is grounded in a contractual conflict between Dr.

11   Putz and Panonia, on one hand, and the Goldens, on the other.  Certainly, the issues of

12   whether or not the Goldens breached their contract with Plaintiffs, breached their

13   covenant of good faith and fair dealing, or committed any number of other alleged torts

14   do not appear to be issues that have been or will be addressed by the French Polynesian

15   court.  *See Ekland Marketing Co. of Calif., Inc. v. Lopez,* No. CIV. S-05-0761

16   FCD/GGH, 2007 WL 2288319 at *4 (E.D. Cal. Aug. 8, 2007) (denying motion to stay

17   proceedings pursuant to international abstention doctrine pending outcome of Spanish

18

19   _____

20   [8] In *Intel,* the Ninth Circuit considered whether it was appropriate to stay a federal court
     action pending state court proceedings, rather than proceedings in a foreign court.  12 F.3d at
21   913.  However, the Ninth Circuit has made clear that this difference is immaterial.  *See
     Neuchatel,* 925 F.2d at 1195 ("[T]he fact that the parallel proceedings are pending in a foreign
22   jurisdiction rather than a state court is immaterial.  We reject the notion that a federal court owes
     a greater deference to foreign courts than to our own state courts.").

1  proceedings where contracts at issue in the two matters were different, and complaint in

2  federal court also alleged tort claims not at issue in Spanish proceeding).

3         Because there is "substantial doubt as to whether the [other] proceedings will

4  resolve the federal action," the court is precluded from granting the Goldens' motion to

5  stay or dismiss pursuant to the international abstention doctrine." *See Intel,* 12 F.3d at

6  913.  Further, because the Ninth Circuit has found that this factor is dispositive, "it is

7  unnecessary for [the court] to weigh the other factors included in the [] analysis." *See id.*

8  at 913 n.7.[9]  The court denies the Goldens' motion to dismiss or stay this action based on

9  notions of international comity or the international abstention doctrine.

10 **D.     Ripeness**

11        The Goldens' argument that Plaintiffs' complaint and the present dispute is not

12 ripe for consideration is without merit.  "The basic rationale of the ripeness doctrine is to

13 prevent courts, through avoidance of premature adjudication, from entangling themselves

---

15 [9] Even if the court were to consider these factors, however, the analysis would weigh
   against granting a staying or dismissing the case.  Although the 18 SCIP shares at issue in the
16 French Polynesian litigation relate to a specific bungalow, as far as the court can discern on the
   basis of this motion to dismiss, those shares are still simply shares in a partnership or association.
   Indeed, Plaintiffs have alleged that despite their efforts to the contrary there has never been a
17 share-to-deed transfer with regard to Bungalow # 12.  (Compl. at ¶ 51.)  Thus, contrary to the
   Goldens' assertions (Mot. at 8-9), at this point, there is no indication that the French Polynesia
18 court "has assumed jurisdiction over a res." *Nakash,* 882 F.2d at 1415.  Further, this is the
   Goldens' home forum, and the Plaintiffs' chosen forum.  In this action involving an alleged
19 breach of contract between these parties, the court is not convinced that French Polynesia is the
   more convenient forum, *see id.*, or that Plaintiffs would even be able to obtain jurisdiction over
20 the Goldens in that forum.  In addition, irrespective of the outcome of the French Polynesian
   action, the court would still likely have to engage in piecemeal litigation because resolution of
21 that action is not determinative of this one.  *Id.*  With regard to the remaining factors, the court
   finds that they are either neutral or unknown at this point in the litigation.  Thus, even applying
22 the factors relevant to an international abstention analysis, the court finds that there is no grounds
   for abstention here.

1    in abstract agreements."  *Scott v. Pasadena Unified Sch. Dist.,* 306 F.3d 646, 662 (9th

2    Cir. 2002) (internal quotation marks omitted).  The current dispute is not abstract or

3    hypothetical.  Plaintiffs allege that the Goldens have breached a contract (Compl. at ¶¶

4    54-64) and committed various torts (*id.* at ¶¶ 69-94), and that as a result Plaintiffs have

5    suffered present damage in an amount of at least $517,571.00 (*id.* at ¶ 99(a)).  The

6    dispute is ripe for consideration, and the court denies the Goldens' motion for dismissal

7    based on this ground.

8    **E.     Forum Selection Clause**

9           The Goldens assert that Plaintiffs should be bound by the forum selection clause

10   contained within the SCIP Articles of Association.  (Mot. at 10.)  The forum selection

11   clause states:

12          Any claim which may arise during the duration or the liquidation of the
            Company, related to Company matters, or among the partners themselves,
13          or between the Company and the partners, or between surviving partners
            and the heirs, assigns or representatives of a deceased partner, shall be
14          judged by the courts which have jurisdiction over the area in which the real
            property is located.

15   (Hall Decl. (Dkt. 10-1), Ex. C.)  For the following reasons, the court denies this portion

16   of the Goldens' motion.

17          First, the court notes that although SCIP has been named as a defendant in this

18   matter, at this time, it has made no appearance.  The only parties presently before the

19   court are Plaintiffs and the Goldens.  In this matter, Plaintiffs are asking the court in part

20   to determine whether the Goldens breached their contract to Plaintiffs to sell or transfer

21   18 shares of SCIP, and to "arrange that the [SCIP] Board of Directors will approve the

22

ORDER- 18

transfer of the stocks as required by the By-laws of the Corporation." (*See* Compl., Ex. A at 3.)  Plaintiffs are also alleging tort and other claims arising out of or following this initial underlying contractual dispute.  Based on the allegations here, only one of these parties – either the Goldens or Plaintiffs – can be a SCIP partner at any one time, not both.  In their complaint, Plaintiffs allege that they have been "ousted by SCIP" (Compl. at ¶ 46), and that according to SCIP the Goldens "are currently the owners of the eighteen SCIP shares" in dispute (*id.* at ¶ 48).  The by-laws or other governing "statutes" of SCIP are relevant here to the extent that they shed light on Plaintiffs' allegations or the Goldens' defenses, but because both Plaintiffs and the Goldens cannot be members of SCIP simultaneously, these "statutes" would not govern the relationship between these specific parties.  Rather, the operative contract here with regard to any forum selection clause would be the one between the Goldens and Plaintiffs.  Neither party is alleging that this 1987 contract contains a forum selection clause, and thus the court denies the Goldens' motion for dismissal on this ground.

Even if the forum selection clause found in the SCIP Articles of Association were applicable, however, the court would decline to enforce it here.  The court analyzes the following factors to determine whether a forum selection clause is reasonable:  (1) whether the clause was incorporated into the contract as the result of fraud, undue influence, or overweening bargaining power, (2) whether the forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes by deprived of its day in court, and (3) whether enforcement of the clause would contravene a strong public policy of the forum in which the suit was brought.  *Argueta,* 87 F.3d at 325.

1    The relevant factor for the court to consider here is whether Plaintiffs will for all

2  practical purposes be deprived of their day in court if the forum selection clause in the

3  SCIP Articles of Association is enforced.  Both parties acknowledge that Panonia either

4  is presently engaged or has engaged in litigation against SCIP in French Polynesia.

5  Thus, there is little doubt that a court in French Polynesia could and would assume

6  jurisdiction over SCIP, which is a partnership organized under the law of Bora Bora,

7  French Polynesia.  (Compl. at ¶ 17.)  However, as noted above, SCIP, although named in

8  the instant suit, has not yet appeared before the court.  The only defendants presently at

9  issue are the Goldens, and the court finds considerable doubt as to whether a French

10  Polynesian court would or could assume jurisdiction over these defendants.

11    In response to Plaintiffs concern regarding the jurisdictional issue (Resp. at 10-

12  11), the Goldens simply state:  "Plaintiffs should not be allowed to offer conclusory

13  statements concerning the procedural law of a foreign territory."  (Reply (Dkt. # 22) at

14  5.)  The Goldens provide no substantive response or evidence which would indicate that

15  they would be subject to jurisdiction in French Polynesia.  Neither have the Goldens

16  expressed or acknowledged in any of their pleadings before this court any willingness to

17  voluntarily submit to the jurisdiction of the French Polynesian court.  Although Plaintiffs

18  bear the burden of showing why enforcement of the forum selection provision would be

19  unreasonable,[10] it is sufficient that Plaintiffs have raised serious and legitimate concerns

20

21    [10] The party seeking to avoid the consequences of a forum selection clause bears "a heavy
22  burden of proof."  *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 592 (1991).

ORDER- 20

1    related to obtaining personal jurisdiction over the Goldens in French Polynesia, which

2    the Goldens all but ignore in their Reply.[11]  *See APL Co. v. Kemira Water Solutions,*

3    *Inc.,* No. 09-3967 SC, 2010 WL 841285, at *6 & n.8 (N.D. Cal. Mar. 10, 2010)

4    (declining to enforce forum selection clause on similar grounds).  The court is persuaded

5    that because it is doubtful that a French Polynesian court would have jurisdiction over

6    the only defendants presently before the court, there is a significant risk that Plaintiffs

7    will be deprived of their day in court if the clause is enforced.  Therefore, dismissal here

8    based on this forum selection clause would be unreasonable, and the court denies the

9    Goldens' motion.

10   **F.    Forum Non Conveniens**

11         The Goldens seek dismissal on grounds of forum non conveniens.  (Mot. at 11-

12   12.)  The Goldens have the burden to demonstrate (1) the existence of an adequate

13   alternative forum, and (2) that the balance of private and public interest factors favor

14   dismissal.  *See Loya v. Starwood Hotels & Resorts Worldwide, Inc.,* 583 F.3d 656, 664

15   (9th Cir. 2009); *Dole Foods Co. v. Watts,* 303 F.3d 1104, 1118 (9th Cir. 2002).  The

16   private interest factors include:  (1) the relative ease of access to sources of proof, (2) the

17   availability of compulsory process for attendance of hostile witnesses, and cost of

18   obtaining attendance of willing witnesses, (3) the possibility of viewing subject premises,

19

20        [11] Further, in the context of a Rule 12(b)(3) motion, the court "must draw all reasonable
21   inferences in favor of the non-moving party and resolve all factual conflicts in [that party's]
     favor."  *Murphy,* 362 F.3d at 1138.  Under this standard, Plaintiffs have met their burden.  The
22   factual conflict over whether French Polynesian courts could or would assume jurisdiction over
     the Goldens must be resolved in Plaintiffs' favor.

1    and (4) all other factors that render trial of the case expeditious and inexpensive.  *Loya,*

2    583 F.3d at 664.  The public interest factors include:  (1) administrative difficulties

3    flowing from court congestion, (2) the imposition of jury duty on the people of a

4    community that has no relation to the litigation, (3) local interest in having localized

5    controversies decided at home, (4) the interest in having a diversity case tried in a forum

6    familiar with the law that governs the action, and (5) avoidance of unnecessary problems

7    in conflicts of law.  *Id.*

8        The court has broad discretion in deciding a motion based on forum non

9    conveniens.  *EFCO Corp. v. Aluma Sys. USA, Inc.,* 268 F.3d 601, 603 (8th Cir. 2001).

10   Forum non conveniens is an exceptional tool to be employed sparingly, not a doctrine

11   that compels plaintiffs to choose the optimal forum for their claim.  *Mujica,* 381 F. Supp.

12   2d at 1140 (quoting *Dole Foods,* 303 F.3d at 1118 (internal quotation marks omitted)).  A

13   district court considering a forum non conveniens motion must decide "whether

14   defendants have made a clear showing of facts which establish such oppression and

15   vexation of a defendant as to be out of proportion to plaintiff's convenience, which may

16   be shown to be slight or nonexistent."  *Boston Telecomms. Group, Inc. v. Wood,* 588 F.3d

17   1201, 1206 (9th Cir. 2009) (quoting *Dole Foods,* 303 F.3d at 1118) (internal quotation

18   marks omitted).  The Goldens have not met this heavy burden here.

19       "There is a substantial presumption in favor of a plaintiff's choice of forum."

20   *Agudas Chasidei Chabad v. Russian Fed'n,* 528 F.3d 934, 950 (D.C. Cir. 2008).  Indeed,

21   "courts have been reluctant to apply the doctrine of forum non conveniens if its

22   application would force an American citizen to seek redress in a foreign court."  *Paper*

1  *Operations Consultants Int'l, Ltd. v. SS Hong Kong Amber,* 513 F.2d 667, 672 (9th Cir.

2  1975) (internal quotations omitted).  In addition, the court considers the possibility that

3  Dr. Putz chose this forum in order to obtain personal jurisdiction over the Goldens.  *See*

4  *Mujica,* 381 F. Supp. 2d at 1141.  "The more it appears that a . . . plaintiff's choice of

5  forum has been dictated by reasons that the law recognizes as valid, the greater the

6  deference will be given to the plaintiff's forum choice."  *Id.* (quoting *Iragorri v. United*

7  *Techs. Corp.,* 274 F.3d 65, 71-72 (2d Cir. 2001) (en banc)).  Dr. Putz has already had one

8  action in the Western District of Virginia against the Goldens dismissed as a result of

9  lack of personal jurisdiction.  (*See* Compl., Ex. G.)  By filing in the Western District of

10 Washington, the Goldens' home district, Dr. Putz could ensure the availability of

11 personal jurisdiction over these defendants in this action.

12      In any event, as a threshold matter, the Goldens have failed to demonstrate that

13 French Polynesia is an available forum.  Although it is clear that Dr. Putz has brought suit

14 against SCIP in French Polynesia, there is no indication that the Goldens would be

15 subject to suit there or that they consent to jurisdiction there.  Failure to demonstrate that

16 they are amendable to service of process in French Polynesia is fatal to their assertion of

17 forum non conveniens.  *See Williams v. Wilson,* No. 05 C 227 S, 2005 WL 2100980, at

18 *2 (W.D. Wis. Aug. 30, 2005).  Whether Dr. Putz is able to sue SCIP in French Polyneisa

19 is not the issue the court must determine when deciding whether or not to dismiss Dr.

20 Putz's claims against the Goldens on ground of *forum non conveniens*.  All defendants,

21 not just one or a portion, must be come within the jurisdiction of the alternative forum.

22 *See Dole Foods,* 303 F.3d at 1118-19; *see also* 15 Wright, Miller & Cooper, Federal

1    Practice & Procedure§ 3828 at 179 (dismissal predicated on forum non conveniens

2    requires availability of alternative forum possessing jurisdiction as to all parties).  Since

3    the Goldens did not address their amenability to service of process in French Polynesia,

4    they have not persuaded the court that an alternate forum exists.

5           Even if the Goldens had demonstrated that French Polynesia is an alternative

6    forum, the court determines nonetheless that the action should remain in this district after

7    balancing the private and public factors.  The remaining relevant private and public

8    factors weighing in favor of and against transfer are split relatively evenly.  As the

9    Goldens point out, SCIP, the other named defendant in this action, is located in Bora

10   Bora, French Polynesia, and Bunglow # 12 is located in French Polynesia as well.  (*See*

11   Compl. at ¶ 20.)  Witnesses and documents regarding the repairs and improvements that

12   Dr. Putz claims to have made to the bungalow, and the alleged disrepair and diminished

13   value since his alleged ouster from SCIP are likely located there.  On the other hand, Dr.

14   Putz alleges that the remaining parties and primary witnesses are located in the United

15   States, including the Goldens, Dr. Putz, and SCIP Chief Executive Officer Francois

16   Ergas, who resides in, and is a domiciliary of California.  (Compl. at ¶¶ 14-17.)  With

17   regard to public interest factors, there is no undue burden in having a controversy

18   involving Washington residents decided by jury here.  Further, there is a strong interest in

19   having a controversy involving Washington residents decided here.  *See, e.g., Carideo v.*

20   *Dell, Inc.,* 706 F. Supp. 2d 1122, 1129 (W.D. Wash. 2010) (Washington has a "strong

21   interest in protecting its citizens under its laws.").  The court is also practiced in applying

22   Washington law, which Dr. Putz alleges will predominate the case.  (Resp. at 15.)  All in

1   all, the remaining forum non conveniens factors split fairly evenly.  Because the Goldens

2   bear the burden of demonstrating that an alternate forum would be more convenient, an

3   even split does not favor dismissal.

4         Considering that Washington is their residence, the Goldens cannot demonstrate

5   that this is a vexatious forum for them.  The court is to accord deference to Dr. Putz's

6   forum, particularly here where the evidence suggests that Dr. Putz chose this forum in

7   order to ensure personal jurisdiction over the Goldens.  The Goldens have failed to

8   demonstrate that they are amenable to service in French Polynesia, and failed to

9   demonstrate that the relevant private and public factors weigh in favor of conducting the

10  litigation in French Polynesia.  The court denies the Goldens' motion to dismiss based on

11  forum non conveniens.

12  **G.**      **Statute of Limitations, Equitable Tolling, and the Discovery Rule**

13        The Goldens have asserted that Plaintiffs' claims for breach of contract, breach of

14  the implied covenant of good faith and fair dealing, negligent misrepresentation,

15  intentional interference with property, and intentional interference with business

16  expectancies are barred by the applicable statutes of limitations.[12]  They argue that the

17

18  _____

19      [12] The statute of limitations in Washington for breach of contract is six years.  RCW
20  4.16.040(1).  A three-year statute of limitations applies to claims for breach of the duty of good
    faith and fair dealing, negligent misrepresentation, intentional interference with property or
    trespass, and intentional or tortious interference with business expectancy.  *See Steinberg v.*
21  *Seattle-First Nat'l Bank,* 832 P.2d 124, 125 n.4 (Wash. Ct. App. 1992) (duty of good faith and
    fair dealing & intentional interference with business expectancy); RCW 4.16.080 (negligent
22  misrepresentation & intentional trespass).

ORDER- 25

statutes of limitation with regard to events surrounding a 1987 contract have long since

expired.  (Mot. at 12-15, 17, 20.)

       In response, with regard to their breach of contract claim, Plaintiffs allege

alternatively that the Goldens did not breach their contract until 2008 when they allegedly

refused to continuing assisting in completing the transfer of the SCIP shares or Bungalow

# 12 to Plaintiffs (*see* Compl. at ¶ 47), or that equitable tolling or equitable estoppel

applies to prevent the statute of limitations from barring their claims (Resp. at 18-19).[13]

A district court may grant a motion to dismiss on statute of limitations grounds "only if

the assertions of the complaint, read with the required liberality, would not permit the

plaintiff to prove that the statute was tolled." *Morales v. City of Los Angeles,* 214 F.3d

1151, 1153 (9th Cir. 2000) (quoting *Tworivers v. Lewis,* 174 F.3d 987, 991 (9th Cir.

1999)).  "Generally, the applicability of equitable tolling depends on matters outside the

pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss . . . if

equitable tolling is at issue." *Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 1003-04

(9th Cir. 2006) (citing *Supermail Cargo, Inc. v. United States,* 68 F.3d 1204, 1206 (9th

Cir. 1995)); *see Cervantes v. City of San Diego,* 5 F.3d 1273, 1276 (9th Cir. 1993)

---

[13] Plaintiffs also assert that the discovery rule applies to toll the statute of limitations with regard to their breach of contract claim.  (Resp. at 16-17.)  This argument fails.  The Washington Supreme Court has strictly limited application of the discovery rule in breach of contract cases.  In *1000 Virginia Ltd. P'ship v. Vertecs Corp.,* 146 P.3d 423, 430-31 (Wash. 2006), the Court held that the Washington Court of Appeals lacked authority to extend the discovery rule to a breach of contract action, but nevertheless applied the discovery rule "to construction contract actions where latent defects are alleged."  The contract here does not fall within this limited category, and as such the discovery rule is inapplicable.

1  (providing that application of equitable tolling "is not generally amenable to resolution on

2  a Rule 12(b)(6) motion").

3      "Equitable tolling is a legal doctrine that allows a claim to proceed when justice

4  requires, even though it would normally be barred by the statute of limitations."

5  *Troztzer v. Vig,* 203 P.3d 1056, 1062 n.9 (Wash. Ct. App. 2009).  In Washington, the

6  predicates for application of the doctrine of equitable tolling are (1) bad faith, deception,

7  or false assurances by the defendant, and (2) the exercise of diligence by the plaintiff.  *Id.*

8  at 1062 (citing *Millay v. Cam,* 955 P.2d 791, 797 (Wash. 1998)).

9      Plaintiffs have alleged numerous false assurances by Defendants.  For example,

10  Plaintiffs allege that the Golden assured them in 1987 that they had obtained the

11  necessary SCIP Board approval and had properly transferred the 18 shares.  (Compl. at ¶

12  28.)  Plaintiffs also have alleged that the Goldens reiterated these reassurances in 2005,

13  and even executed an affidavit so attesting.  (*Id.* at ¶ 43.)  In the intervening years,

14  Plaintiffs allege that SCIP treated them in every way as if they were the owners of the 18

15  shares, including charging them for association and maintenance fees, inviting them to

16  shareholder meetings (*id.* ¶¶ 31, 33), and even electing Dr. Putz as President of the SCIP

17  Board of Directors (*id.* Ex. F at 10).  The court cannot say that these "assertions . . . , read

18  with the required liberality, would not permit the plaintiff to prove that the statute was

19  tolled." *Morales,* 214 F.3d at 1153.  These allegations are sufficient to withstand a

20  motion to dismiss based on the statute of limitations.

21      In addition to equitable tolling, the discovery rule may also apply to toll the

22  applicable statute of limitations with regard to Plaintiffs' remaining tort claims.  *See, e.g.,*

1    *Sabey v. Howard Johnson & Co.,* 5 P.3d 730, 739 (Wash. Ct. App. 2000) (applying

2    discovery rule to negligent misrepresentation); *Allyn v. Boe,* 943 P.2d 364, 373 (Wash.

3    Ct. App. 1997) (applying discovery rule to timber trespass, and collecting other cases

4    applying doctrine to actions involving "tortious injury to real property").  Under the

5    discovery rule, the statute of limitations does not begin to run until a plaintiff  discovers

6    or reasonably could have discovered all the essential elements of the cause of action.  *See*

7    *Allyn,* 943 P.2d at 372.  Again, similar to the court's analysis above concerning equitable

8    tolling, Plaintiffs allegations are sufficient to support application of the discovery rule,

9    and to withstand a motion to dismiss based on the statute of limitations.  Further

10   discovery may reveal facts suggesting that the exceptions of equitable tolling or the

11   discovery rule should not apply, but the court expresses no opinion regarding the proper

12   outcome at this stage of the litigation.  The Goldens' motion to dismiss based on

13   expiration of the statute of limitations is denied.

14   **H.    Economic Loss Rule/Independent Duty Doctrine**

15        The Goldens also have moved to dismiss Plaintiffs' tort claims for negligent

16   misrepresentation, intentional interference with property or trespass, and intentional or

17   tortious interference with business relations on the basis of the economic loss rule.  (Mot.

18   at 15-16, 18-20.)  On November 4, 2010, while the Goldens' motion was pending, the

19   Washington Supreme Court issued two new decisions reinterpreting its prior

20   jurisprudence with regard to the economic loss rule, and announcing a new rule

21   denominated the "independent duty doctrine."  *See Eastwood v. Horse Harbor Found.,*

22   *Inc.,* ___ P.3d ___, No. 81977-7, 2010 WL 4361986 (Wash. Nov. 4, 2010) & *Affiliated*

*FM Ins. Co. v. LTK Consulting Servs., Inc.,* ___ P.3d ___, No. 82738-9, 2010 WL 4350338 (Wash. Nov. 4, 2010).

Over the years, courts have interpreted the Washington Supreme Court's jurisprudence on the economic loss rule broadly to "prevent recovery in tort" by parties to a contract when the parties "had an opportunity to allocate the risk of loss" that is the basis of their tort claim in their contract. *See Alejandre v. Bull,* 153 P.3d 864, 870 (Wash. 2007). In *Eastwood,* the Washington Supreme Court acknowledged that this broad reading of its prior jurisprudence was "understandable," but nevertheless changed course – modulating not only its formulation, but its nomenclature as well. Now denominated the "independent duty doctrine," the new formulation in Washington is as follows:

> An injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract. The court determines whether there is an independent duty of care, and the existence of a duty is a question of law and depends on mixed considerations of logic, common sense, justice, policy and precedent.

*Eastwood,* 2010 WL 4361986 at *4 (Fairhurst, J., with two Justices concurring, two Justices concurring in the result, and four Justices concurring separately) (internal quotation marks omitted).[14] *Eastwood* rejects the argument that an economic loss cannot be recovered in tort whenever it arises out of a relationship governed by contract.

---

[14] The *Eastwood* decision is actually comprised of three opinions: the opinion of the court authored by Justice Fairhurst with two additional Justices joining, a concurring opinion authored by Justice Chambers, with three additional Justices joining, and a second concurring opinion authored by Justice Madsen. *See Eastwood,* 2010 WL 4361986. Likewise, the *Affiliated FM* decision is actually comprised of three opinions: the opinion of the court again authored by Justice Fairhurst, a concurring opinion authored by Justice Chambers, and a concurring and dissenting opinion authored by Justice Madsen. *See Affiliated FM*, 2010 WL 4350338.

1   *Eastwood*, 2010 WL 4361986, at *4 ("[T]he fact that an injury is an economic loss or the

2   parties also have a contractual relationship is not an adequate ground, by itself, for

3   holding that a plaintiff is limited to contract remedies.).  Indeed, in both *Eastwood* and

4   *Affiliated FM*, the Washington Supreme Court found that a well established tort duty

5   existed independent of the contract.  *Eastwood*, 2010 WL 4361986, at *2-*3, *10

6   (finding lessee under duty not to commit waste to property); *Affiliated FM*, 2010 WL

7   4350338, at *5 (finding engineer performing maintenance work under a common law

8   duty of care due to significant public interest in safety).

9           Yet, while narrowing the class of claims precluded by the economic loss rule (now

10  the independent duty doctrine), the Washington Supreme Court reaffirmed that the

11  fundamental policy behind the economic loss rule – protecting contractual expectations –

12  remains a principal policy consideration:

13          An initial policy consideration is the usefulness of private ordering.  We
            assume private parties can best order their own relationships by contract.
14          The law of contracts is designed to protect contracting parties' expectation
            interests and to provide incentives for parties to negotiate toward the risk
15          distribution that is desired or customary. . . .   In contrast, tort law is a
            superfluous and inapt tool for resolving purely commercial disputes. . . .   If
16          aggrieved parties to a contract could bring tort claims whenever a contract
            dispute arose, certainty and predictability in allocating risk would decrease
17          and impede future business activity.

18  *Affliated FM,* 2010 WL 4350338, at *4 (internal quotation marks and citations omitted).

19          While neither *Eastwood* nor *Affiliated FM* involved the specific tort claims alleged

20  here, the Supreme Court's opinion in *Eastwood* specifically recognizes that damages for

21  tortious interference with another's business expectancies and negligent

22  misrepresentation may be recoverable "even if they arise from contractual relationships."

1    *Eastwood,* 2010 WL 4351986, at *4 (citing *Commodore v. Univ. Mech. Contractors, Inc.,*

2    839 P.2d 314, 322 (Wash. 1992), and *ESCA Corp. v. KPMG Peat Marwick,* 959 P.2d 651

3    (Wash. 1998), respectively).  While this court does not believe that this means that such

4    tort claims will always survive in the context of a contractual relationship between the

5    parties, the court can find no reason under the Washington Supreme Court's revised

6    guidance on this issue to bar Plaintiffs' tort claims here.

7        The parties' contractual relationship, based on their 1987 agreement to transfer 18

8    shares of SCIP from the Goldens to the Plaintiffs in return for the sales price, is distinct

9    from the Goldens' alleged duty to refrain from tortiously interfering with or trespassing

10   on Plaintiffs' property rights, or tortiously interfering with Plaintiffs' future business

11   relationships in terms of rentals for Bunglaow # 12.  In fact, these duties would exist even

12   if the Plaintiffs had purchased the SCIP shares from another source.

13       Further, at the time of the parties' 1987 contract, Mr. Golden was a member of

14   SCIP's Board of Directors.  (Compl. at ¶ 28.)  Certainly, as a member of the Board, and

15   with knowledge that Dr. Putz was relying upon his representations, Mr. Golden would

16   have had a duty, independent of any contractual obligation, to refrain from negligently

17   misrepresenting any action taken or approval issued by the Board.

18       Finally, there is nothing on the face of the pleadings to indicate that the parties

19   were sophisticated commercial players attempting to forecast or allocate their risk of loss

20   solely within the confines of their 1987 contract.  To the contrary, the contract attached as

21   an exhibit to the complaint evinces a distinct lack of commercial sophistication.  (*See*

22   Compl., Ex. A.)  Under these circumstances, the court's preference of "private ordering"

1   and limiting the parties to their contractual remedies is less compelling.  Taking into

2   consideration all of these mixed factors of "logic, common sense, justice, policy and

3   precedent," the court finds that Plaintiffs' tort claims are not barred under the more

4   relaxed standard of Washington's new independent duty doctrine.  The Goldens' motion

5   for dismissal based on the economic loss or independent duty doctrine is denied.

6   **I.     Failure to State Valid Causes of Action for Trespass and Tortious
           Interference with Business Expectancies**

7

8        The Goldens allege that Plaintiffs have failed to state valid causes of action for

9   intentional interference with property (or trespass) and tortious interference with business

10  expectancies, and that these claims should be dismissed.  (Mot. at 16-17, 19-20.)  As

11  discussed below, Plaintiffs state valid claims, and the court denies the Goldens' motion.

12       Contrary to the Goldens' assertions, Plaintiffs have alleged a valid cause of action

13  for trespass.  Construing the complaint in the light most favorable to them, the court finds

14  that Plaintiffs have alleged that they have been improperly ousted by SCIP from

15  Bungalow # 12 (*see* Compl. at ¶¶ 10-11, 46), and that the Goldens have taken possession

16  of Bungalow # 12, refused to relinquish it, refused to abate Plaintiffs' ouster, and have

17  done so intentionally (*id.* at ¶¶ 11-12, 47-51).  On the basis of these allegations, Plaintiffs

18  state a valid cause of action for intentional interference with property or trespass.

19       The Goldens argue that a party to a contract cannot be liable in tort for breaching

20  its own contract.  (Mot. at 19 (citing *Houser v. Redmond,* 559 P.2d 577 (Wash. Ct. App.

21  1977), *aff'd*, 586 P.2d 482 (Wash. 1978) ("[D]efendant's breach of his own contract with

22  the plaintiff is of course not a basis for the tort.").)  The court agrees, and if this were the

ORDER- 32

1    sole allegation with regard to Plaintiffs' tortious interference claim, then the claim would

2    require dismissal.  However, it is not the 1987 contract between the parties with which

3    Plaintiffs assert that the Goldens have interfered.  Reading the complaint in a light most

4    favorable to them, the court finds that Plaintiffs allege that the Goldens are interfering

5    with Plaintiffs' ability to continue contracting with others to rent Bungalow # 12.

6    (Compl., ¶¶ 46, 48-50 85-94.)   Specifically, Plaintiffs have alleged that the Goldens'

7    "intentional interference with Plaintiffs' rental business expectations," has resulted in

8    "lost rental profits, . . . emotional damages," and diminution in the value of property

9    value.  (*Id.* at ¶ 94.)  The Goldens' motion to dismiss Plaintiffs' claim for tortious

10   interference is, therefore, denied.[15]

11   **J.      Declaratory Judgment**

12          The Goldens assert that Plaintiffs' claim for declaratory judgment should be

13   dismissed on the same grounds of forum non conveniens, forum selection clause, and

14   statute of limitations as asserted for the underlying claims discussed above.  (Mot. at 21-

15   _____

16          [15] Throughout their motion, the Goldens assert or imply that Plaintiffs are estopped or
     that this court is somehow bound by various factual findings of the Western District of Virginia

17   when it issued its order dismissing the Plaintiffs' action for lack of personal jurisdiction over the
     Goldens.  (*See* Mot. at 13-14, 16-17, 19-20.)  The court disagrees.  The fact that a court takes

18   evidence for the purpose of deciding a jurisdictional issue does not mean that those factual
     findings are binding in future proceedings.  *See Ohio Nat'l Life Ins. Co. v. United States,* 922

19   F.2d 320, 325 (6th Cir. 1990) ("The *res judicata* effect of a 12(b)(1) motion is . . . limited to the
     jurisdictional issue."); Charles A. Wright & Arthur R. Miller, 5B *Federal Practice and

20   Procedure* § 1350 (3d ed.) ("In as much as a Rule 12(b)(1) motion basically is one in abatement,
     a dismissal is not a decision on the merits and has no res judicata effect. . . .") (footnotes

21   omitted).  Where a court takes evidence for a limited purpose of ruling on jurisdiction, the
     preclusive effect of such findings is limited to the issue decided.  *United States v. Ritchie,* 15

22   F.3d 592, 598 (6th Cir. 1994).  Thus, neither this court, nor the parties, are bound by the factual
     findings of the court in the Western District of Virginia, except as they relate to the narrow issue
     of whether there was personal jurisdiction over the Goldens in that district.

1  22.)  Because the court has denied the Goldens' motion on these grounds with respect to

2  the underlying causes of action, it also denies the Goldens' motion with respect to

3  Plaintiffs' claim for declaratory relief.

## IV.    CONCLUSION

5         For the foregoing reasons, the court DENIES the Goldens' motion to dismiss (Dkt.

6  # 10), and DENIES the Plaintiffs' motion for leave to file a supplemental affidavit (Dkt.

7  # 24).

8         Dated this 7th day of December, 2010.

JAMES L. ROBART
United States District Judge

ORDER- 34