UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HERBERT R. PUTZ, et al., | CASE NO. C10-0741JLR |
| Plaintiffs, | ORDER |
| v. | |
| MICHAEL H. GOLDEN, et al., | |
| Defendanst. | |

## I.  INTRODUCTION

Before the court is Defendants Michael H. Golden and Susan C. Golden's ("the Goldens") motion for additional sanctions against Plaintiff Herbert R. Putz and other relief.[1]  (*See generally* Mot. (Dkt. # 106).)  In addition to sanctions, the Goldens also seek an order under Federal Rule of Civil Procedure 67(a) permitting them to deposit

---

[1] The motion also seeks relief with respect to Plaintiffs' counsel's request to withdraw from representation of Dr. Putz and Plaintiff Panonia Realty Corporation.  (Mot. at 8-9.)  The court has already addressed this aspect of the Goldens' motion.  (*See* 8/3/12 Order (Dkt. # 124) at 6-10.)

ORDER- 1

with the court the $150,000.00 judgment established by the court's Findings of Fact and Conclusions of Law (Dkt. # 98) pending the outcome of Plaintiffs' appeal to the Ninth Circuit (*see* Notice of Appeal (Dkt. # 121)). (*See* Mot. at 9-10.) Having reviewed the Goldens' motion, Dr. Putz's response (Resp. (Dkt. # 116) at 2-3; Fogg Decl. (Dkt. # 117)), the balance of the record, and the governing law, the court GRANTS in part and DENIES in part the Goldens' motion. The court denies the Goldens' request for additional sanctions against Dr. Putz, but grants the Goldens' request to deposit funds with the court pursuant to Rule 67(a).

## II. BACKGROUND

This lawsuit is about a bungalow in Bora Bora, French Polynesia. From February 21-23, 2012, the court presided over a three-day bench trial concerning proper ownership of 19 shares in Societe Civil Immobiliere Paepaepupure ("SCIP"). The 19 shares relate to one of the 16 bungalows within SCIP's development on Bora Bora. Following the bench trial, the court found in favor of Plaintiffs and awarded $150,000.00 to be satisfied pursuant to the parameters of a constructive trust established by the court over the proceeds of the sale of the 19 SCIP shares. (Findings & Conclusions (Dkt. # 98) ¶ 83 at 53.) The terms of the court's order stated that "[t]he constructive trust shall be effective upon the proceeds in an amount up to, but not exceeding, $150,000.00, plus statutory interest accruing from the date judgment is entered." (*Id.* (citing RCW 19.52.020).) The court's order also provided that the constructive trust would "automatically lift, if at any time prior to the sale of the SCIP shares, the Goldens satisf[ied] the judgment . . . by

paying Plaintiffs $150,000.00, plus any accrued statutory interest following the entry of judgment." (*Id.* ¶ 84.)

Prior to the issuance of the court's Findings of Fact and Conclusions of Law, the court imposed sanctions upon Dr. Putz based on certain discovery violations and Dr. Putz's conduct and false testimony at trial. (*See generally* 5/22/12 Order (Dkt. # 87).) The court ordered Dr. Putz to pay the attorney fees that the Goldens had incurred in preparing their supplemental trial brief and their first motion for sanctions. (*Id.* at 14.) The award totaled $13,380.00.[2] (*Id.*)

Following the court's issuance of its Findings of Fact and Conclusions of Law, the parties engaged in a limited amount of settlement discussions. (*See* Hall Decl. (Dkt. # 107) ¶¶ 2-6, Exs. A-B.) During the course of these negotiations, Dr. Putz sent a check to counsel for the Goldens in the amount of $13,380.00. (*Id.* ¶ 6; Supp. Hall Decl. (Dkt. # 125) ¶ 2, Ex. A.) Along with the check, on July 13, 2012, Dr. Putz sent an email to counsel for the Goldens in which he stated:

> I mailed you a check in the amount of $13,380 in satisfaction of the "order regarding sanctions" issued by Judge Robart on 5/22/2012. This check may be surrendered to Mr. and Mrs. Golden only against their release of any further claim and satisfaction of the "order".

(Hall Decl. Ex. B at 1.) Counsel for the Goldens interpreted Dr. Putz's email as an "attempt[] to extract a 'release of claim' in return for the negotiation of the check." (Mot. at 4.) In response, on July 19, 2012, the Goldens brought their present motion for

---

[2] The court also found that Dr. Putz's testimony at trial lacked credibility. (5/12/12 Order at 15.)

ORDER- 3

additional sanctions asserting that Dr. Putz's conduct constituted a violation of the court's prior sanctions order.[3] (*See* Mot. at 5.)

The court notes that Dr. Putz sent a copy of his July 13, 2012 email to his counsel, Mr. Steven Fogg, and Mr. Fogg gave Dr. Putz his "OK" prior to Dr. Putz's transmission of the email to the Goldens' counsel. (Fogg Decl. Ex. B at 16 ("Herb, it is OK with me for you to send this letter.").) Although Mr. Fogg moved to withdraw from his representation of Dr. Putz just three days later (*see* Dkt. # 101), he had not done so yet, and neither had the court granted any motion to withdraw at that time. The court did not grant Mr. Fogg's motion to withdraw from representation of Dr. Putz until August 3, 2012. (*See* Dkt. # 124.) Accordingly, at the time Dr. Putz sent the email in question, Mr. Fogg was still Dr. Putz's counsel of record. *See* Local Rule W.D. Wash. GR 2(g)(3) ("The authority and duty to attorneys of record shall continue until there shall be a substitution of some other attorney of record . . . ."); *id.*, GR 2(g)(4) (""[N]o attorney shall withdraw an appearance in any cause . . . except by leave of court."). Further, Mr. Fogg remains counsel of record for Plaintiff Panonia Realty Corporation to this date. (*See id.*)

In response to the filing of the Goldens' motion, Dr. Putz sent an email to the Goldens' counsel on July 27, 2012, withdrawing his request for a written release prior to

---

[3] The court notes that Dr. Putz also sent his payment to the Goldens in an untimely manner. The court's order on sanctions required Dr. Putz to pay $13,380.00 in sanctions to the Goldens by July 6, 2012. (*See* 5/22/12 Order at 15-16.) However, the Goldens have stated that "[h]ad Dr. Putz simply mailed a $13,380 check unconditionally to the Goldens or their counsel several days late, the Goldens would not be bringing this motion seeking to hold Dr. Putz in contempt." (Mot. at 4.) Thus, the untimeliness of Dr. Putz's check is not at issue here.

the Goldens' negotiation of his check in payment of the court's sanctions order.  (Fogg Decl. (Dkt. # 117) Ex. A at 2 ("I herewith withdraw my request date 7/13/12 for Mr. M and Mrs. S Golden release of any further claim and satisfaction of the 'order'"); *see also id.* Ex. B (attaching Dr. Putz's *pro se* response to the motion) (stating "Putz withdrew on 7/27/2 [sic] at 2:20 PM the request for release of any further claims and in satisfaction of the 'order'").)

### III.     ANALYSIS

**A. Jurisdiction**

On August 1, 2012, Dr. Putz filed a notice of appeal to the United States Court of Appeals for the Ninth Circuit "from Findings of Fact and Conclusions of Law, entered in this action on July 2, 2012."  (Dkt. # 121.)  Accordingly, the court must consider whether it has jurisdiction to consider the Goldens' motion following Dr. Putz's appeal. Generally, the timely filing of a notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).  The district court's role pending appeal is limited to performing ministerial functions and preserving the status quo until decision by the appellate court. *Newton v. Consolidated Gas Co.*, 258 U.S. 165, 177 (1992).  The court has previously held that it has jurisdiction following Dr. Putz's appeal to consider motions for sanctions.  (8/3/12 Order (Dkt. # 124) at 4 (citing *Societe Succession Richard Guiono v. Besdeder, Inc.*, No. CV 03-1310-PHX-MHM, 2007 WL 3238703, at *10 (D. Ariz. Oct. 31, 2007); *Alward v. Burrelle's Info. Servs.*, No. CV-00-365-PHX-ROS, 2001 WL 1708779, at *7-*11 (D. Ariz. 2001); *Fieldturf, Inc. v. Sw. Recreational Indus.*, 212

F.R.D. 341, 342-43 (E.D. Ky. 2003)).) Further, resolution of the Goldens' request pursuant to Rule 67(a) to deposit funds with the court is consistent with the court's post-appeal ministerial functions and "does not compromise or affect those aspects of the case involved in the appeal." *See O'mara v. Geico Ins. Co.*, No. 09-CV-229-GKF-FHM, 2010 WL 5067616 (N.D. Okla. Dec. 7, 2010) (holding that appeal did not divest district court of jurisdiction to rule on defendant's motion to deposit judgment amount with court pursuant to Rule 67 to stop the running of interest). Thus, the court concludes that it has jurisdiction to consider the issues the Goldens raise in their motion.

**B. The Goldens' Request for Additional Sanctions**

The court has "inherent power" to issue sanctions for a "'full range of litigation abuses.'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991)). The court "may levy sanctions pursuant to its inherent authority for 'willful disobedience of a court order . . . .'" *Id.* A willful violation of a court order "does not require proof of mental intent such as bad faith or improper motive, but rather, it is enough that a party acted deliberately." *Id.*

The court declines to impose additional sanctions upon Dr. Putz under the factual circumstances described above. From the court's review of the record, the problem appears to be one of miscommunication between the parties during the course of settlement negotiations rather than a deliberate attempt on Dr. Putz's part to violate the court's order. The miscommunication may have been the result of distrust between the parties engendered by Dr. Putz's prior egregious conduct in this litigation (*see generally*

5/22/12 Order), but that is not grounds for the imposition of additional sanctions. Indeed, prior to sending his email, Dr. Putz sought and received the approval of his counsel. (*See* Fogg Decl. Ex. B at 16.) Further, after receiving the Goldens' motion outlining their basis for believing they had been aggrieved once again, Dr. Putz promptly withdrew the "conditional" nature of his tender of payment with respect to the court's sanctions order. (*Id.* Ex. A at 2.) The Goldens have Dr. Putz's check in compliance with the court's order, and Dr. Putz's counsel has stated unequivocally that "the Goldens can and should cash [Dr. Putz's] check unconditionally." (Resp. at 2.) The court agrees. Based on the foregoing, however, the court declines to exercise its discretion to impose additional sanctions against Dr. Putz and denies this portion of the Goldens' motion.

### C. The Goldens' Request to Deposit $150,000 with the Court

In its Findings of Fact and Conclusions of Law, the court established a constructive trust in favor of Plaintiffs over the proceeds of any sale of SCIP shares associated with the bungalow at issue here, up to, but not exceeding $150,000.00 plus statutory interest accruing from the date judgment is entered. (7/2/12 Order (Dkt. # 98) ¶ 83.) The court ruled that the Goldens' could satisfy the court's judgment either through the sale of the bungalow and the constructive trust established by the court or by simply paying Plaintiffs $150,000.00 plus any accrued statutory interest following entry of judgment.[4] The Goldens have stated that "[t[heir intention is to raise $150,000 as quickly

---

[4] The court also ruled that if the shares associated with the bungalow ultimately sold for less than $150,000.00 plus statutory interest accruing from the date judgment is entered, then the Goldens would have to make up any shortfall to Plaintiffs. (7/2/12 Order ¶ 83.)

as possible and satisfy the judgment established by the Court's Findings and Conclusions," even prior to selling the bungalow at issue here. (Mot. at 9.) Plaintiffs, however, have appealed the court's judgment in their favor.[5] (*See* Dkt. # 121.) This puts the Goldens in a difficult position. They would like to satisfy the court's judgment, but cannot while Plaintiffs' appeal is pending. In the meantime, statutory interest will accrue with respect to the $150,000.00 in a manner that is beyond their control. To resolve this dilemma, the Goldens have sought the court's permission to deposit the $150,000.00 at issue with the court pending the Ninth Circuit's ruling. The Goldens assert that this will halt the accumulation of statutory post-judgment interest pending resolution of Plaintiffs' appeal. (Mot. at 10.) Plaintiffs oppose the Goldens' request. (Resp. at 3.)

Federal Rule of Civil Procedure 67(a) states:

> If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party--on notice to every other party and by leave of court--may deposit with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting deposit.

Fed. R. Civ. P. 67(a). Whether Rule 67 relief should be available is a matter within the discretion of the court. *Cajun Elec. Power Coop. v. Riley Stoker Corp.*, 901 F.2d 441, 445 (5th Cir. 1990).

There is very little case authority applying Rule 67. *See* 12 Charles Alan Wright, Aurthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice and Procedure

---

[5] Although the Goldens indicated at the time they filed their motion that they may file a cross-appeal, they have not done so.

ORDER- 8

§ 2991 at 58 (2d ed. 1997) ("Rule 67 is a rather unimportant rule. Predictions made at the time it was adopted that there are not very many occasions for the application of this rule have been proven accurate.") (internal quotations omitted). Indeed, neither party has cited to any case authority in support of their respective positions. (*See* Mot. at 9-10; Resp. at 3.) Nevertheless, the scant authority the court found supports granting the Goldens' request.

Although Rule 67 itself says nothing about halting the accumulation of interest with respect to monies paid into the court, "[a]n important reason for a party to make a deposit in court is to avoid paying interest on an amount it concedes it will ultimately have to pay." 10 J. Gustafson, Federal Procedure, Lawyers Edition § 24:6 (2012). The court considers the Second Circuit's decision in *Kostomoulous v. Astria Shipping Co., S.A.*, 467 F.2d 91 (2d Cir. 1972), to be instructive. Like the circumstances here, the plaintiff in *Kostomoulous* had prevailed but was unsatisfied with the amount of the judgment and appealed. The Second Circuit ruled that the appellee could, by leave of court, pursuant to Rule 67, pay the judgment amount into the registry of the court and stop the running of interest on the judgment. *Id.* at 94.

Other courts have agreed that interest stops accruing on funds after the date on which a party deposits those funds with the court pursuant to Rule 67. *See, e.g.*, *O'mara*, 2010 WL 5067616, at *2 ("[Rule ] 67 permits deposit into court to stop the running of interest.") (citing *United States ex rel Garrett v. Midwest Constr. Co.*, 619 F.2d 349, 353-54 (5th Cir. 1980); 13 James Wm. Moore, et al., Moore's Federal Practice, § 67.02 (3rd ed. 1997)); *Reliable Marine Boiler Repair, Inc. v. Mastan Co.*, 325 F. Supp. 58, 64

ORDER- 9

(S.D.N.Y. 1971). A few courts, including the Ninth Circuit, have chided litigants for failing to take advantage of the protection apparently afforded by Rule 67. These courts have indicated that had a defendant requested and been granted leave to deposit funds into the court, the defendant's liability for interest would have ceased at that time. *See Bank of China v. Wells Fargo Bank & Union Trust Co.*, 209 F.2d 467, 473 (9th Cir. 1953) ("If such a request [for the court's permission to deposit money into the registry of the court pursuant to Rule 67] had been made and granted, liability for interest would have ceased at that time."); *Fassbinder v. Pennsylvania RR. Co.*, 233 F. Supp. 574, 576 (W.D. Pa. 1964) ("Rule 67 . . . is certainly broad enough to authorize the payment into court of a judgment and costs in order to stop the running of interest thereon if such is desired.").

Although case authority is scant, the court concludes that the Goldens' request to deposit the judgment amount of $150,000.00 into the court's registry pending Plaintiffs' appeal in order to stop the accrual of interest is a proper use for Rule 67 in the present circumstances. Accordingly, the court grants the Goldens' motion in this respect. Pursuant to Rule 67(a), the court directs the Goldens to "deliver to the clerk a copy of the order permitting deposit." Fed. R. Civ. P. 67(a). The court further directs the clerk to deposit the referenced $150,000.00 in accord with Rule 67(b). *See* Fed. R. Civ. P. 67(b) (requiring money paid into the court to be "deposited into an interest-bearing account or invested in a court-approved, interest-bearing investment").

//

//

## IV.   CONCLUSION

Based on the foregoing, the court GRANTS in part and DENIES in part the Goldens' motion (Dkt. # 106).  As described above, the court denies the Goldens' request for additional sanctions against Dr. Putz, but grants the Goldens' request to deposit the judgment amount of $150,000.00 into the court registry pursuant to Rule 67.

Dated this 26th day of October, 2012.

JAMES L. ROBART
United States District Judge